UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In Re:  )<br>**DOUGLAS J. CONDIDORIO**, Debtor,  )<br>  )<br>_____ )<br>  )<br>**DOUGLAS J. CONDIDORIO**,  )<br>  )<br>      Appellant,  )<br>  )<br>      v.  )<br>  )<br>**REGIONS BANK**,  )<br>  )<br>      Appellee,  ) | No. 3:10-0441<br>Adv. Proc. No. 3:09-ap-0126<br>Judge Campbell |

## MEMORANDUM

This is a bankruptcy appeal in which the Magistrate Judge has filed a Report and Recommendation ("R & R") (Docket No. 8) recommending that the judgment of the Bankruptcy Court be affirmed. Debtor/Appellant Douglas J. Condidorio has filed objections to the R & R (Docket No. 10), to which Appellee Regions Bank has filed a response in opposition (Docket No. 16). For the following reasons, the Report and Recommendation is accepted and approved, Condidorio's Objections thereto are overruled, and the decision of the Bankruptcy Court in favor of Regions Bank is affirmed.

## I. STANDARDS OF REVIEW

Under Rule 72(b)(3), the Court conducts a *de novo* review of "any part of the magistrate judge's disposition that has been objected to." Fed. R. Civ. P. 72(b)(3). Upon that review, the Court may accept, reject, or modify the Magistrate Judge's recommended disposition, consider further evidence, or return the matter to the Magistrate Judge for additional consideration. Id.

1

Further, findings of fact by a bankruptcy judge "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed. R. Bank. P. 8013. Legal conclusions of the bankruptcy judge are reviewed *de novo*. See, In re Parker, 499 F.3d 616, 620 (6th Cir. 2007).

## II. **FACTUAL AND PROCEDURAL BACKGROUND**

To place Condidorio's objections into perspective, a brief background of this case is necessary.

RLG, LLC was a company that owned and operated the Kings Creek Golf Club near Spring Hill, Tennessee. David Miller was the managing member of RLG, and Condidorio was a member and minority owner.

Condidorio first invested in RLG in 2004. Thereafter, Miller requested that Condidorio and other members execute personal guaranties to secure loans for RLG from various lenders. Miller also requested that the members provide personal financial statements in connection with the guaranties. Although Condidorio executed the requested guaranties, he did not keep copies of those documents and left it to Miller to maintain those records as the general manager of RLG.

On December 19, 2007, Condidorio filled out a personal financial statement and provided it to Miller, with the understanding that Miller would provide the financial statement to a lender. That financial statement did not disclose any of the contingent liabilities evidenced by Condidorio's guaranties of the earlier loans to RLG, and failed to list $5,625,000 in liabilities. Condidorio testified during the Bankruptcy Court trial that he and Miller had an understanding that Condidorio would fill out the statement as best he could, and Miller would insert the contingent liabilities into the financial statement because he was the one who had access to that paperwork.

The December 19, 2007 financial statement was used to secure a loan for RLG from Regions Bank purportedly for improvements to the golf course. Up until closing, all discussions about the loan were between Miller and Emitt Webb, a Loan Officer at Regions Bank. Condidorio attended the closing and learned, for the first time, that he was to be the sole borrower on the loan, and not merely one of two guarantors.

Upon learning he was to be the sole borrower, Condidorio spoke privately with Miller. Condidorio claims that he eventually signed the loan because Miller told him that, if he did not, Textron Financial, RLG's primary lender and the holder of a promissory note in the amount of $4 million personally guaranteed by Condidorio, would begin foreclosure proceedings on the golf course property.

RLG received the loan from Regions Bank, and the proceeds were used to pay creditors. Initially, RLG made monthly payments, but those ceased in October 2008 and the note went into default.

Condidorio subsequently filed a voluntary Chapter 7 bankruptcy petition. Regions Bank then filed an adversary complaint objecting to the discharge of the loan signed by Condidorio. After a trial during which the Bankruptcy Judge had the opportunity to assess the credibility of the witnesses (including Condidorio and Miller), the Bankruptcy Judge found that the debt from Condidorio to Regions Bank was nondischargeable under 11 U.S.C. § 523(a)(2)(B). At the time of the decision, Regions was owed $255,997.96, a figure which included principal, interest and late charges.

On appeal to this Court, Condidorio argues that the Bankruptcy Court's ruling was in error because (1) Condidorio did not furnish the financial statements to Regions Bank; (2) Condidorio did not have an intent to deceive Regions Bank; and (3) Regions Bank's reliance on the financial

statement was not reasonable. The Magistrate Judge recommends that these arguments be rejected, and that the Bankruptcy Court's decision be affirmed.

### III. **OBJECTIONS**

In his Objections, Condidorio recasts most of the same arguments raised in his brief on appeal as objections. The Magistrate Judge conscientiously addressed Condidorio's arguments in the R &R. Nevertheless, because this matter is reviewed *de novo*, the Court turns to the Objections raised by Condidorio.[1]

### A. **"Caused To Be Made or Published" – 11 U.S.C. § 523(a)(2)(B)(iv)**

Section 523(a)(2)(B)(iv) requires that, for a debt to be deemed nondischargeable, a debtor must make or publish false financial information. Condidorio argues that this element was not met by Regions Bank because both "[t]he Bankruptcy Court and the R & R properly found that the Debtor provided his financial statement to Mr. Miller with the limiting intent that Mr. Miller would 'complete [the Debtor's] personal financial statement and [to] use it to obtain funding for the golf course.'" (Docket No. 10 at 2, brackets in original). Condidorio contends that what he gave Miller was nothing more than an "unfinished partial financial statement," and he did not authorize distribution of the financial statement in that condition to Regions Bank.

Condidorio's argument must be rejected because neither the Bankruptcy Court, nor the Magistrate Judge, made the specific finding he claims, and the portions of the record he cites do not show otherwise. The Bankruptcy Judge in her oral findings and conclusions stated: "*From the*

---

[1]At a couple of points in his Objections, Condidorio argues that the Magistrate Judge applied the wrong standard of review, but does not explain how that is so. Because of those alleged errors, he requests that the Court review the matter *de novo*. (See, Docket No. 10 at 12 & 17.). While the Court does not agree that the Magistrate Judge misapplied the proper standards either in relation to review of a bankruptcy judge's factual determinations, or the standard to be used in relation to Section 523(a)(2)(B), Condidorio is entitled to *de novo* review by virtue of Rule 72.

4

*debtor's testimony* he intended Mr. Miller to complete [the] signed personal financial statement[.]" (Bankr. FOF/COL[2] at 7, italics added).[3] Similarly, the Magistrate Judge quoted the foregoing non-italicized language, but prefaced that by stating that the Bankruptcy "Court further noted, *according to Debtor's testimony . . . .*" (R & R at 9, italics added).

Moreover, Condidorio was not the only one to testify about the formulation of the financial statement. Miller testified unequivocally that Condidorio never asked him to fill out any portions; that his (Miller's) understanding was that the financial form was complete when it was given to him; and that, if Condidorio testified otherwise, he was mistaken. (Bankr. Hrg. at 158-59). It was for the Bankruptcy Judge to weigh the conflicting testimony, In re Barrett, 487 F.3d 353, 362 (6th Cir. 2007), and it is readily apparent from a fair reading of her ruling that she did not credit Condidorio's contention about an understanding with Miller in relation to the filling out of the financial statement. Condidorio's next objection is to the Magistrate Judge's "find[ing] that the Debtor 'failed to testify that there had ever been any express agreement, or even a specific discussion, regarding Miller's obligation to add information to Condidorio's financial statement before furnishing it to Regions.'" (Docket No. 10 at 4, quoting R & R at 17). Condidorio argues that this "finding" is in "direct contradiction" to the "proof," including his testimony that he would fill out the financial statements "as best as [he] could" on the templates provided by Miller, that he "requested help from Mr. Miller in filling out the financial information," and Miller's concession

---

[2]Findings of Fact/Conclusions of Law.

[3]The Bankruptcy Judge noted in other places in her findings that it was *Condidorio's* position that Miller was to complete the financial statement. For example, early in her ruling, the Bankruptcy Judge stated: "The Debtor testified that he filled out the personal financial statement . . . with the understating that Mr. Miller would add in certain business information." (Id. at 3). Later in her ruling, she stated, "Debtor . . . at best assum[ed] that Mr. Miller would fill in the missing information," and that Condidorio's actions were reckless "if he, indeed, intended Mr. Miller to fill out certain points[.]" (Id. at 10)

5

that he could "understand how [Condidorio] understood that [Miller] was going to provide information about the partnership, anything related to the business." (Docket No. 10 at 4-5).

As a technical matter, the Magistrate Judge made an observation, not a finding. Regardless, the "proof" that Condidorio points to does not show an express agreement in the sense that there was a meeting of the minds between him and Miller. In any event, and as already noted, it was for the Bankruptcy Judge to determine whether there was an explicit understanding.

Condidorio next raises several arguments on the issue of agency. First he argues that the Bankruptcy Judge and the Magistrate Judge erred in failing to mention that it was Regions Bank's burden to prove the existence of an agency under Tennessee law, and that an agency relationship cannot be shown merely by the statements of the supposed agent. Second, Condidorio argues that because his testimony that he intended and expected Miller to fill out the financial statements was accepted by the Bankruptcy Judge, Miller could not have been an agent since Miller testified that he never intended to fill in any information on the financial statement. Third, Condidorio contends that both the Bankruptcy Judge and the Magistrate Judge failed to address the scope of the agency and recognize that Miller "acted outside the scope of authority as agent by providing the incomplete document to Regions." (Docket No. 10 at 9). Fourth and finally, Condidorio argues that both the Bankruptcy Judge and the Magistrate Judge mistakenly relied upon In re Kakde, 382 B.R. 411 (Bankr. S.D. Ohio 2008).

Central to Condidorio's agency argument is the faulty premise that his testimony about an agreement with Miller was accepted as a fact by the Bankruptcy Judge. Further, he errs by reading the Bankruptcy Judge's ruling as pinning agency solely to the issue of whether Miller was, in fact, supposed to add information about contingent liabilities to the financial statement.

6

The Bankruptcy Judge mentioned agency and cited In re Kakde immediately after noting that Condidorio testified he expected Miller to complete the financial form. However, that statement was made in the context of an overall discussion about whether Condidorio should be held liable for having furnished a material false financial statement to Regions Bank. In this vein, the Bankruptcy Judge ruled that "the proof supports a finding that the Debtor did furnish the materially false financial statement to Regions Bank, albeit through Miller" as evidenced by the fact that "[t]he Debtor admitted that he provided Mr. Miller with an undated personal financial statement each time Mr. Miller was seeking further funding to keep the golf course afloat"; that "[t]he Debtor further admitted that he knew Mr. Miller was using his personal financial information to obtain such funding"; and that "the pattern was for Mr. Miller to obtain a loan and for the Debtor to show up at a closing to sign as a guarantor." (Bankr. FOF/COL at 7).

These findings are amply supported by the record and not based solely upon Miller's statements. Further, while the Bankruptcy Judge did not state that Regions Bank had the burden to prove the existence of an agency relationship, the Court will not assume that she misunderstood the burden, particularly since she did not require Condidorio to disprove the existence of an agency relationship, or otherwise suggest that an agency relationship was implied.

Simply put, Condidorio supplied Miller with the December 2007 financial statement with full knowledge that he would use it to shop around for a loan for the golf course, just as he had provided Miller with signed financial statements in the past when the golf course needed an infusion of cash. This is sufficient to show an agency relationship. See, Milliken Group, Inc. v. Hays Nissan, Inc., 86 S.W.3d 564, 569 (Tenn. Ct. App. 2001)("Having cloaked the agent with authority, the principal is accordingly estopped from denying liability for the acts of an agent acting within that

authority").

Finally on the issue of agency, neither the Bankruptcy Judge, nor the Magistrate Judge erred in citing In re Kakde. As is pertinent to this case, In re Kakde generally holds that to prove the materially false written statement element for nondischargeability under 11 U.S.C. § 523(a)(2)(B), "[p]roof of an agency relationship or direct involvement in the misrepresentation is required." Id., 382 B.R. at 428. While the court in In re Kakde ultimately found no basis to impute fraud, it did so only after "reviewing the facts closely," finding that the debtor appeared to be sincere in his testimony and an "honest man," and noting that it was a "close call." Id. at 428, 249 & 431. The Bankruptcy Judge in this case was entitled to reached a different conclusion based upon entirely different facts and conflicting testimony.

**B. "Intent to Deceive" and Gross Recklessness – 11 U.S.C. § 523(a)(2)(B)(iv)**

In addition to requiring that a false statement be made or published, Section 523(a)(2)(B)(iv) requires that the false statement be made with the intent to deceive. The intent to deceive may be shown by a debtor's gross recklessness in failing to list obligations on a financial statement. In re Woolum, 979 F.2d 71, 73 (6th Cir. 1992).

Gross recklessness is not defined in the Bankruptcy Code, nor has it been clearly defined in the context of Section 523(a)(2)(B)(iv). In re Sansom, 224 B.R. 49, 57 n. 11 (Bankr. M.D. Tenn. 1998). In In re Sansom (on which Condidorio relies), the court defined gross recklessness "to mean flagrant, indicating a mental attitude of the debtor that would be the evidentiary equivalent of intent to deceive." Id.

Condidorio quotes In re Copeland, 291 B.R. 740, 787 (Bankr. E.D. Tenn. 2003) for the proposition that in determining whether the debtor acted with gross recklessness, "the analysis 'must

8

focus on whether the surrounding circumstances or the debtor's actions appear so inconsistent with the debtor's self-serving statement that []he lacked intent that the proof leads the court to disbelieve the debtor.'" (Docket No. 10 at 13). He argues the Bankruptcy Judge did not undertake this analysis because she made "no determination of the Debtor's credibility" or, for that matter, "any other witness, including Mr. Miller." (Id. at 14, emphasis in original). Condidorio also argues that the surrounding circumstances show no intent to deceive, as evidenced by the fact that he provided the incomplete financial statement to Miller, "a better informed third party." (Id.). He insists that "relying on the better informed party to fill in the relevant information shows a greater regard for the rights of others, and a higher concern as to the consequence of providing misleading information." (Id. at 15, emphasis in original).

The Bankruptcy Judge never explicitly stated she was discrediting Condidorio's testimony about whether there was an agreement with Miller as to who was to place the contingent liabilities on the financial statements. However, and as already noted, it is clear that the Bankruptcy Judge was not persuaded by Condidorio's testimony that such an agreement was reached.[4] "'When . . . a trial court fails to render express findings on credibility but makes a ruling that depends upon an implicit determination that credits one witness's testimony as being truthful, or implicitly discredits another's, such determinations are entitled to the same presumption of correctness that they would have been accorded had they been made explicitly.'" United States v. Davenport, 220 Fed. Appx. 374, 378 (6th Cir. 2007)(quoting, Self v. Collins, 973 F.2d 1198, 1214 (5th Cir.1992)); see, United

---

[4]While Condidorio claims that his testimony about an agreement is supported by the fact that he did not provide the financial statement directly to Regions Bank, that same fact could be viewed as being consistent with an intent to deceive. The pattern was to provide Miller with signed, but incomplete, financial statements in order to secure funding from a lender. Presumably, a lender is more apt to lend when the borrower's financial statement shows fewer liabilities, and, therefore, Condidorio was more likely to receive a loan if his contingent liabilities were understated regardless of who actually handed the statement to the lender.

9

States v. Fox, 548 F.3d 523, 529 (7th Cir. 2008)("court's findings on witness credibility (even when only implied) are entitled to great, although not absolute deference").

Regardless, the Bankruptcy Judge's conclusion that Condidorio acted with gross recklessness was not limited to the fact that he supposedly relied on Miller to complete the financial statement provided to Regions Bank. To the contrary, the Bankruptcy Judge stated:

> The Debtor who is Vice President of [a multi-national consulting company], signed incomplete financial statements, at best, assuming that Mr. Miller would fill in the missing information. He did not check the document nor did he ask for or keep copies of his other personal financial statements and he did not ask for or keep copies of the several loan guarantees that he had previously signed, despite the significantly large amounts being guaranteed.
>
> Unfortunately, the Debtor's blind signing, failing to check the document afterwards, and supplying of an incomplete financial statement and reckless signing of loan documents without regard for the possible negative consequences caught up with him.

(Bankr. FOF/COL at 10-11). Such facts are sufficient to show gross recklessness for purposes of the intent to deceive prong of Section 523(a)(2)(b). See, In re Copeland, 291 B.R. at 787(for purposes of Section 523(a)(2)(B)(iv), gross recklessness can be established where the debtor has the ability to inform himself of a writing he signs and relies upon to secure credit, but fails to read it or claims ignorance of its content); In re Hall, 342 B.R. 653, 656 (Bankr. M.D. Fla. 2006)(signing loan documents without reading them is reckless conduct); In re Weiner, 86 B.R. 912, 915 (Bankr. N.D. Ohio, 1988)("By submitting the forms in blank without concern or knowledge of their content on completion, Debtor, an educated businessman, acted with gross recklessness regarding their eventual veracity").[5]

---

[5]In passing, Condidorio also faults the Bankruptcy Judge and the Magistrate Judge for not considering "the circumstances of duress surrounding the signature on the Debtor's financial statement." (Docket No. 10 at 16). There is no evidence of duress surrounding the execution of the financial statement. The only alleged "duress" occurred at closing. At that point, of course, Debtor's intent to deceive had already been established because the financial statement

**C. Reasonable Reliance – 11 U.S.C. § 523 (a)(2)(B)(iii)**

For a debt to be nondischargeable under Section 523(a)(2)(B), the creditor must have reasonably relied upon the written false statement. 11 U.S.C. § 523(a)(2)(B)(iii). Condidorio argues that the Bankruptcy Judge and Magistrate Judge failed to consider the "bad faith" of Regions Bank in determining whether it reasonably relied upon his financial statement.

Condidorio argues that Webb, the loan officer, did not provide the underwriters with "several key pieces of information," including that he had never even talked with Condidorio; the loan documents incorrectly identified Condidorio's occupation; RLG (not Condidorio) was to make the payments on the loan; and the loan proceeds would be used to pay down debts, rather than to make capital improvements. Additionally, Condidorio insists that Regions Bank could not have reasonably relied upon the financial statement because "significant red flags existed to warrant further investigation," including that his financial statement did not list an ownership interest in RLG despite the fact that he incurred significant losses (noted in his tax returns) which were attributable to his interest in RLG; Regions Bank had no previous relationship with Condidorio (and no contact until the date of closing); the loan was for business purposes, but Regions Bank relied upon a consumer credit check; and Regions Bank did not follow its established lending procedure in approving the loan.

"Whether a creditor's reliance was reasonable is a factual determination to be made in light of the totality of the circumstances." In re Ledford, 970 F.3d 1556, 1560 (6th Cir. 1992).[6] It is a

---

had been submitted, and Regions Bank had authorized a loan in reliance on the statement.

[6] "Among the circumstances that might affect the reasonableness of a creditor's reliance are: (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the

factual determination which "must be reviewed under the deferential clearly erroneous standard." In re Woolum, 979 F.2d at 76.

Importantly, "[o]nce it has been established that a debtor has furnished a lender a materially false financial statement, the reasonableness requirement of § 523(a)(2)(B) 'cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith.'" Id. (citation omitted). Therefore, "[a] district court reviewing a bankruptcy court's determination of reasonable reliance is not 'to undertake a subjective evaluation and judgment of a creditor's lending policy and practices.'" Id. (citation omitted).

Given the foregoing, whether Regions Bank reasonably relied upon the financial statement in making the loan is not a matter that this Court considers in a vacuum. Rather, the Court must accept the Bankruptcy Court's findings unless they are clearly erroneous.

Here, in looking at the totality of the circumstances, the Bankruptcy Judge considered whether Regions Bank followed its established lending procedures, whether it looked to outside sources to verify the financial information provided, whether it had previous dealings with Condidorio, and whether the financial statement contained "red flags." Based upon consideration of those circumstances, the Bankruptcy Court found that Regions Bank reasonably relied upon its standard procedures in approving the loan, reviewed the information provided, checked Condidorio's credit report, and had no reason to look behind the financial statement.

Even though Condidorio points to evidence which he believes should have piqued Regions

---

possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations." Id. Contrary to Condidorio's position, the Bankruptcy Judge was not required to identify and consider each of these factors since In re Ledford holds that the determination is to be based upon the totality of the circumstances in the case, and the listed factors *may* be use to determine whether the creditor's reliance is reasonable under the circumstances.

Bank's curiosity, and even though he believes that Regions Bank could have been more rigorous in its review, the question is one of reasonable reliance and the Court cannot say that the Bankruptcy Judge's factual determinations on this issue are clearly erroneous.

One of Regions Bank's underwriters, Jeffrey Makofski, testified in the Bankruptcy Court that he relied on Condidorio's financial statement in approving the loan, and, in fact, the loan was approved, at least in part, because of the strong cash flow reflected in Condidorio's financial statement,[7] and tax returns. (Bankr. Hrg. Tr. at 93-94). Regions Bank also secured a credit report which substantiated the information on Condidorio's personal financial statement and tax returns. Further, because the loan was to be unsecured, Makofski sought approval from his team leader, Gary Freeman, Jr., who reviewed and approved Makofski's underwriting analysis. Freeman's practice was to review all of the documents supporting the loan, including the borrower's financial statement which "play[s] an important role in assessing whether the borrower ha[s] the net worth and liquidity." (Id. at 124). Since the personal financial statement was "false," and since the Bankruptcy Judge on this record could readily conclude that Regions Bank was not acting in bad faith, the Court cannot say that the Bankruptcy Judge committed clear error in finding that Regions Bank reasonably relied upon Condidorio's personal financial statement when it decided to make the loan.

## IV. **CONCLUSION**

Having conducted the *de novo* review required by Rule 72, but with due deference to the factual findings of the Bankruptcy Judge, the Court affirms the Bankruptcy Court Judgment granting judgment in favor of Regions Bank and excepting that judgment from discharge pursuant to 11 U.S.C. § 523(a)(2)(B). The Magistrate Judge's Report and Recommendation (Docket No. 8)

---

[7]The financial report showed $1.8 million in assets and only $400,000 in liabilities

which recommends that disposition is accepted and approved and Condidorio's Objections thereto (Docket No. 10) are overruled.

*Todd Campbell*
Todd J. Campbell
United States District Judge